**UNITED STATES of America**

v.

**Edwin SIEGNER, Paul Catinella, Gilbert Lewin.**

**Crim. Nos. 80–00147–01 to 80–00147–03.**

United States District Court, E. D. Pennsylvania.

May 20, 1980.

Peter F. Vaira, U. S. Atty., Luther Weaver, III, JoAnne A. Epps, Asst. U. S. Attys., Philadelphia, Pa., for plaintiff.

Gilbert Abramson, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Gilbert Lewin has been indicted by the Grand Jury, charging him with conspiracy to secure loans by the use of false statements, making false statements for the purpose of influencing a bank to approve a loan, and aiding and abetting in violation of 18 U.S.C. §§ 371, 1014, and 2.

Presently before the Court is the Government's Motion to Disqualify Gilbert Abramson, Esq., Lewin's attorney in this case.[1] For the reasons set forth below, the motion is granted.

We begin with a brief summary of the facts.[2] Gilbert Abramson (defendant Lewin's attorney) was formerly a partner in the firm of Eilberg, Corson, Getson and Abramson (Eilberg). In 1973 the Spiewak–Lewin Construction Company (Spiewak–Lewin) became a client of the Eilberg firm. The two principals of Spiewak–Lewin were Gilbert Lewin and Joseph Spiewak, each a 50% shareholder. Lewin is a defendant in this case, and Spiewak is an immunized potential government witness. Beginning in 1974, Abramson began to work directly on matters concerning Spiewak–Lewin, representing the company in all litigation, and only in litigation. In 1976 and 1977, Spiewak individually, Lewin individually, and Edward Gordon organized Pine Valley Estates, Inc. (Pine Valley). Gordon also is an immunized potential government witness. The Eilberg firm represented the Pine Valley principals in the organization of the company and related matters.

1. The Government's Motion to Disqualify Counsel was originally brought prior to the indictment of Gilbert Lewin, and the matter assigned to Judge Huyett. *In Re Grand Jury Proceedings*, Misc. No. 78–276. Evidentiary hearings were held on February 11 and March 11, 1980. Prior to a determination by Judge Huyett, this indictment was handed down by the Grand Jury, and the case assigned to this Court.

2. These facts are based upon the testimony and evidence produced at the hearings of February 11 and March 11, 1980, before Judge Huyett.

In June 1977, Abramson gave notice to the Eilberg firm that he was resigning, and actually left the firm in July of 1977. Both Lewin and Spiewak–Lewin transferred legal business to Abramson after his withdrawal from the firm.

Pine Valley was organized to build homes in Philadelphia, with financing to be provided by the Frankford Trust Company (Frankford). Defendants Edwin Siegner and Paul Catinella are, respectively, vice president and clerk of Frankford.

The indictment charges that the three defendants, along with Spiewak and Gordon, engaged in a conspiracy to obtain loans for Pine Valley by concealing from Frankford that Spiewak–Lewin, and Joseph Spiewak and Gilbert Lewin maintained ownership interests in Pine Valley. As a part of this scheme, Lewin allegedly paid a fee to defendants Siegner and Catinella in order to procure these loans. Lewin and the other defendants are further charged with making false statements for the purpose of influencing a bank to approve a loan, in that they allegedly submitted false vouchers for construction expenses, for which the loan would be used as payment.

In its briefs in support of its motion to disqualify Abramson, and in testimony at the hearing before Judge Huyett, the Government alleges that an attempt was made by Lewin to obtain a false bill for legal services from the Eilberg firm in order to justify a false voucher submitted to the bank. It should be noted that a voucher and bill relating to legal expenses incurred from the Eilberg firm are not specifically mentioned in the indictment.

Subsequent to the departure of Abramson and dissolution of the Eilberg firm, a lawsuit was commenced against Abramson concerning the division of the firm's proceeds, including certain fees allegedly collected by Abramson from Lewin in regard to a lawsuit in which Spiewak–Lewin was a party. One of the former law partners in the Eilberg firm involved in the lawsuit against Abramson is Allan Getson. The Government alleges in its briefs that Getson is a potential prosecution witness against Lewin.

The Government contends that Abramson must be disqualified from further representation of Lewin in this case on the grounds of actual or potential conflict of interest, and advances three arguments in support of its motion. The Government argues first that in the representation of Lewin, Abramson may be forced to reveal the confidential communications of Spiewak and Gordon, his former clients and the two potential government witnesses against Lewin. The Government next advances the argument that Abramson has personal knowledge of some of the facts pertinent to this case, and might reasonably be asked to testify by either side. The Government's third argument is that Abramson has a personal interest in the suit by Getson, his former law partner and a potential witness in this case, as to the division of legal fees from Spiewak–Lewin, and that this personal interest, as well as an alleged personal animosity toward Getson, may influence his ability to render legal advice and services to Lewin.

We are guided in our consideration of professional ethical considerations and attorney conflict of interest by the *Code of Professional Responsibility* (Code).

Canon 4 of the Code provides: "A Lawyer Should Preserve the Confidences and Secrets of a Client." Ethical Consideration 4–5 ("EC 4–5") under Canon 4 provides as follows:

EC 4–5 A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client and a lawyer should not use, except with the consent of his client after full disclosure, such information for his own purposes. Likewise, a lawyer should be diligent in his efforts to prevent the misuse of such information by his employees and associates. Care should be exercised by a lawyer to prevent the disclosure of the confidences and secrets of one client to another, and no employment should be accepted that might require such disclosure.

Disciplinary Rule 4–101(B) was designed to promote EC 4–5.

DR 4–101 Preservation of Confidences and Secrets of a Client.

(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

There is an inherent conflict in Abramson's prior representation of Spiewak–Lewin, and of Spiewak, and his present representation of Lewin in this criminal case.

In the course of his earlier representation of the company and the individual principals, Abramson was in a position to be privy to many conversations and other information concerning the business affairs of them all. In his testimony at the March 11, 1980 hearing Abramson stated that he had had "hundreds" of conversations with Lewin about the business affairs of Spiewak–Lewin in connection with various litigation matters (Transcript at 77), Abramson further testified that he had also spoken with Spiewak "three or four" times concerning the business affairs of Spiewak–Lewin (Transcript at 73) but that he did not consider these to be confidential communications (Transcript at 74). Abramson stated that Spiewak and Lewin were shareholders of the Spiewak–Lewin corporation, but that in his opinion, his client was the corporation. He also stated that he did not recollect ever having represented Pine Valley or Gordon although he had once had Gordon as a witness in a case involving Spiewak–Lewin (Transcript at 68).

Despite Abramson's assertions, we cannot accept the characterization of these conversations as non–confidential. Furthermore, we reject Abramson's distinction between the representation of the Spiewak–Lewin corporation and its two individual shareholders, Spiewak and Lewin. We need not engage in a detailed examination of the nature of the attorney–client relationship which exists between an attorney and the shareholders, directors, and officers of a corporation when an attorney represents a corporation. In the situation presented to us here, it is evident that the business affairs of the corporation are not easily separated from those of the two individual shareholders. Moreover, we are dissuaded from any such attempt not merely by the difficulty of such a task, but by the consequences, discussed more fully below, of any failure to properly identify a conflict of interest or confidential communication. Although Abramson does not now believe that continued representation of Lewin involves a conflict of interest resulting from his previous representation of Spiewak–Lewin and of Spiewak, and his association with the Eilberg firm while it represented Spiewak, Lewin, Gordon and Pine Valley, it seems at least possible that such a conflict will become more apparent as this case moves forward. Even if not represented directly by Abramson, Gordon and Pine Valley were represented by Abramson's former law firm while Abramson was still associated with the firm. Gordon and Spiewak, as potential witnesses against Lewin, will face cross–examination by Abramson. Effective cross–examination might reasonably be expected to involve the use of any information and knowledge possessed by Abramson as a result of his prior representation. However, such information, garnered through an attorney–client association, may well prove in fact to be of a confidential nature. Use of such confidences to the disadvantage of the former client or to the advantage of another is clearly unethical under Diciplinary Rule 4–101(B). In furtherance of his professional duty to Lewin, his present client, Abramson would therefore be forced to reveal such confidences as he may be privy to, thereby violating the mandate of the Code of Professional Responsibility as to the protection of the attorney–client relationship with his former client. Under such circumstances, Abramson should be disqualified from further representation of Lewin in this case.

Canon 5 of the Code provides: "A Lawyer Should Exercise Professional Judgment

on Behalf of a Client." Under Canon 5, Ethical Consideration 5–9 provides:

> Occasionally a lawyer is called upon to decide in a particular case whether he will be witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

Disciplinary Rule 5–102 provides:

> Withdrawal as Counsel When the Lawyer Becomes a Witness.
>
> (A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).
>
> (B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on or behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

■ Abramson must also be disqualified on the basis of the government's assertion that he has some personal knowledge of matters relevant to the indictment and alleged use of false vouchers by defendant Lewin. While it is not clear to us whether or not Abramson actually has such knowledge, the government believes that he does, so that he is a potential witness against Lewin. In addition, if Abramson has personal knowledge, it is entirely possible that a different defense counsel might wish to call Abramson to testify on Lewin's behalf. Abramson's continued representation of Lewin would preclude any such testimony as a defense witness, possibly to the detriment of his client. Moreover, although Abramson does not believe that he has personal knowledge related to this case, or that he would be called as a government witness, his independent professional judgment may be clouded by his, and his client's, desire that he continue as counsel here. A different attorney would be in a better position to assess the existence and extent of any personal knowledge which Abramson may have, and whether he would be of any benefit to Lewin as a defense witness. Disqualification will therefore better serve Lewin's interests and the interest of justice by removing any conflict.

Canon 5 provides: "A Lawyer Should Exercise Independent Professional Judgment On Behalf of a Client." Pursuant to this Canon, Ethical Consideration 5–2 states:

> Interests of a Lawyer That May Affect His Judgment.
>
> A lawyer should not accept proffered employment if his personal interests or desires will, or there is a reasonable probability that they will, affect adversely the advice to be given or services to be rendered the prospective client.

Disciplinary Rule 5–101 provides:

> Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.
>
> (A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

■ We cannot be certain that Abramson's personal interest in the Eilberg firm division of fees suit, in which he and Getson

are adversaries will affect his representation of Lewin. The likelihood of such a conflict is obvious, however, with regard to the cross–examination of Getson, who the government has indicated is a potential prosecution witness. Abramson's allegedly strong animosity toward Getson with respect to their personal dispute could affect Abramson's independent professional judgment with regard to the defense of Lewin, particularly since the Eilberg firm suit involves fee payments by Spiewak–Lewin. As was the case with respect to any personal knowledge of Abramson, a different attorney will be able to represent Lewin without any conflict.

■ We are strengthened in our determination that Abramson be disqualified by our consideration of the dangers presented by the continued representation of Lewin by Abramson even if Spiewak, Gordon and Getson do not testify against Lewin, or Abramson does not cross examine them. Indeed, regardless of whether the case comes to trial, or Spiewak, Gordon or Getson testify, or Abramson cross examines them, or whether Lewin pleads guilty without a trial, any final judgment of guilt would remain forever open to challenge by the defendant on grounds of ineffective assistance of counsel. Whether or not such a claim by the defendant would have any merit at all, the mere existence of that possibility, so likely in a case such as this, fosters a climate of uncertainty unfair to the government, and most importantly, to the defendant. In addition, the effectiveness of, and confidence of the people in the criminal justice system is not enhanced by such doubts. Moreover, sanction of continued representation by attorneys in situations such as this raises the specter of deliberate abuse by defendants and their attorneys, who may seek to avoid disqualification in cases of conflict of interest in the

hope of later seeking reversal of a conviction or withdrawal of a guilty plea.[3]

We are not unmindful of Lewin's choice of Abramson as his attorney, and of Abramson's testimony that he has explained to Lewin the possible ramifications of his continued representation of him, and that Lewin nevertheless wants Abramson to represent him. (Transcript at 77–78). We reject any suggestion by Abramson that Lewin has thereby "waived" any conflict of interest in regard to further representation by Abramson. Although such a waiver of effective assistance of counsel may be made by a defendant, it is obvious that Lewin may not make any waiver of a conflict of interest with respect to third parties. Thus, any disclosure by Abramson of any confidential communications of Spiewak or Gordon must be agreed to by Spiewak and Gordon even if Lewin "waives" Abramson's conflict as regards him (Lewin).[4]

■ This exercise of the court's supervisory powers to disqualify attorney Abramson does not abrogate defendant Lewin's Sixth Amendment rights. The Sixth Amendment guarantees each defendant the "assistance of counsel for his defense." This guarantee "contemplates that such assistance be untrammeled and unimpaired", *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942). Nevertheless, "although the right to counsel is absolute, there is no right to a particular counsel". *United States v. Dolan*, 570 F.2d 1177, 1181 (3d Cir. 1978). "Certainly the sixth amendment should not be interpreted to allow a defendant to sanction a lawyer's breach of ethical duties, when such duties serve the public interest as well as the client's." *Id.* at 1183. "When a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the

---

**3.** Of course, we make no intimation whatsoever of any such intent by those involved in this case.

**4.** The standards established for such a waiver and procedures to be followed by the court are set forth in *United States v. Dolan*, 570 F.2d

1177, 1181 (3d Cir. 1978). No inquiry has been made of the defendant Lewin as to whether the waiver standards have been met here. We need not do so in view of the fact that Lewin may not make a waiver on behalf of Spiewak or Gordon.

court should not be required to tolerate an inadequate representation of a defendant". *Id.* at 1184.

We therefore grant the motion of the government to disqualify Abramson.