UNITED STATES of America, Plaintiff,

v.

Carl Angelo DeLUNA, Carl James Civella, Peter Joseph Tamburello, Carl Wesley Thomas, Anthony Chiavola, Sr., Anthony Chiavola, Jr., Joseph John Aiuppa, John Phillip Cerone, Joseph Lombardo, Anthony John Spilotro, Angelo Lapietra, Milton John Rockman, John Joseph Balistrieri, Joseph Phillip Balistrieri and Frank Peter Balistrieri, Defendants.

No. 83–00124–01/15–CR–W–8.

United States District Court, W.D. Missouri, W.D.

March 19, 1984.

David B.B. Helfrey, Sheryle L. Jeans, U.S. Dept. of Justice, Kansas City, Mo., for plaintiff.

Lawrence Pelofsky, Kansas City, Mo., Oscar B. Goodman, Las Vegas, Nev., for Carl Angelo DeLuna.

Byron N. Fox, Kansas City, Mo., for Carl James Civella.

Robert Beaird, Kansas City, Mo., for Peter Joseph Tamburello.

David W. Russell, Kansas City, Mo., for Carl Wesley Thomas.

Patrick Tuite, Chicago, Ill., for Anthony Chiavola, Jr., and Anthony Chiavola, Sr.

Santo J. Volpe, Chicago, Ill., Byron Neal Fox, Kansas City, Mo., for Joseph John Aiuppa.

Joseph DiNatale, Oak Park, Ill., Byron Neal Fox, Kansas City, Mo., Jack P. Cerone, Chicago, Ill., for John Phillip Cerone.

Judith Halprin, Chicago, Ill., for Joseph John Lombardo.

Oscar B. Goodman, Las Vegas, Nev., for Anthony John Spilotro.

Louis Carbonaro, Chicago, Ill., Byron Neal Fox, Kansas City, Mo., for Angelo Lapietra.

Thomas Rockman, Cleveland, Ohio, Byron Neal Fox, Kansas City, Mo., for Milton John Rockman.

Albert Krieger, Susan Van Dusen, Miami, Fla., Byron Neal Fox, Kansas City, Mo., for John Joseph Balistrieri, Joseph Phillip Balistrieri and Frank Peter Balistrieri.

## ORDER

STEVENS, District Judge.

On March 2, 1984, this court conducted an inquiry pursuant to Fed.R.Crim.P. 44(c) and the government's December 19, 1983, motion to determine whether Oscar Goodman should be disqualified from representing defendants Carl DeLuna and Anthony Spilotro. The government presented transcripts, tapes, and a description of an affi-

davit and two letters filed *in camera*, urging that disqualification of Goodman would preserve public trust in the integrity of the Bar and the administration of justice, protect other defendants' right to a fair trial, and eliminate a web of conflicts of interest. These conflicts, the government asserts, arise out of (1) Goodman's dual representation of DeLuna and Spilotro, co-defendants in the same trial, (2) Goodman's successive representation of DeLuna in a prior related trial and Spilotro in the instant case, (3) Goodman's confidential relationship with numerous government witnesses, at least two of whom indicate they will not waive their attorney-client privilege, and (4) Goodman's knowledge of facts and personal involvement with incidents leading to the indictment.

To defend against the government's allegations and to assess the specific conflicts that may arise at trial, defendants DeLuna, Spilotro, LaPietra, Cerone, and Aiuppa seek disclosure of the government's *in camera* filings. In a post-hearing motion, these same defendants also assert that their right to a fair trial will not be encumbered by Goodman's presence because one tape and transcript evidencing Goodman's involvement may be protected by the attorney-client privilege. However, because the government's transcripts and tapes were admitted without objection for purposes of the hearing, the court will not at this early stage in the proceedings determine their admissibility for trial.

Defendants DeLuna and Spilotro, in opposition to disqualification of their lawyer, Oscar Goodman, ask this Court to accept their waiver of effective assistance of counsel unimpaired by conflicts of interest and to protect their choice of retained counsel under the Sixth Amendment. Thus, this court is faced with two issues: (1) whether, considering the government's presentation of evidence and description of *in camera* filings, the advice of defendant's counsel and a detailed inquiry by the court, defendants DeLuna and Spilotro voluntarily, knowingly, and intelligently waived their Sixth Amendment rights to effective conflict-free representation of counsel, and (2)

whether, considering Goodman's prior representation of government witnesses who assert the attorney-client privilege, and the government's evidence of Goodman's involvement in incidents leading to the indictment, two defendants' Sixth Amendment right to counsel of their choice outweighs twelve other defendants' right to a fundamentally fair trial, the public's interest in preserving the integrity of the judicial system, and the government's interest in protecting its witnesses from cross-examination by their former attorney.

### Waiver

The Sixth Amendment guarantees to each defendant "assistance of counsel for his defense." The constitutional guarantee contemplates effective assistance, "untrammeled and unimpaired" by conflicts of interest. *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942); *United States v. Dolan*, 570 F.2d 1177, 1180 (3rd Cir.1978).

■ "Conflicts may arise when an attorney simultaneously represents clients with differing interests (multiple representation), or when an attorney representing a defendant has previously represented codefendants or trial witnesses (successive representation)." *United States v. Shepard*, 675 F.2d 977, 979 (8th Cir.1982). Possibilities of conflict inherent in a case of multiple representation include: (1) in trial strategy, counsel may make decisions favoring one defendant over another; (2) counsel who appears on behalf of one defendant may make the other or others appear guilty by association; (3) at plea bargaining stage, counsel's recommendation to each defendant may be affected by an assessment of the plea's effect on the other defendant or defendants; and (4) in offering one defendant's defense at trial, counsel may harm or implicate the other. If counsel "steers a neutral course, he may deny the less culpable defendants the chance to blame" the other. *United States v. Agosto*, 675 F.2d 965, 971 n. 5 (8th Cir.1982), *cert. denied*, 459 U.S. 834, 103 S.Ct. 77, 74

L.Ed.2d 74 (1982). In cases involving successive representation, "an attorney may be tempted to use confidential information obtained from a former client to impeach the client" or he "may fail to conduct a rigorous cross-examination for fear of misusing his confidential information." *Id.* at 971.

■ Thus, the Sixth Amendment protects a defendant from representation by "counsel who might be tempted to dampen the ardor of his defense in order to placate another client." *Zuck v. Alabama,* 588 F.2d 436, 440 (5th Cir.1979), *cert. denied,* 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979). In this case, the Sixth Amendment protects DeLuna and Spilotro from representation by Goodman, not only because his loyalties may be divided by representing two co-defendants in the same trial, but because his effectiveness may be impaired if required to cross-examine former clients, government witnesses associated with the Argent Corporation.

■ The Sixth Amendment also affords protection, although not absolute, to a defendant's choice of retained counsel, *United States v. Shepard,* 675 F.2d at 980; *United States v. Agosto,* 675 F.2d at 969, a choice which shall not be unnecessarily obstructed. *United States v. Cunningham,* 672 F.2d 1064 (2nd Cir.1982); *United States v. Shepard,* 675 F.2d at 980. Because a defendant's choice of retained counsel sometimes jeopardizes defendant's superior right to effective assistance of counsel, the Eighth Circuit has stated unequivocally, "a facet of the right to counsel of choice is the defendant's ability to waive his right to the assistance of counsel unhindered by a conflict of interest, provided that waiver is knowing and intelligent." *United States v. Agosto,* 675 F.2d at 969–70.

In *Agosto,* the appellate court rejected the district court's argument that because of unforseeable dangers, a waiver was unacceptable at an early stage in the proceedings. If the nature of "potential conflicts" are "sufficiently communicated" to the defendant, and if he is otherwise competent to understand the dangers, he can make a knowing and intelligent waiver of his right to effective assistance of counsel. *Id.* at 976. *See also Holloway v. Arkansas,* 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978); *United States v. Unger,* 700 F.2d 445, 451 (8th Cir.1983); *United States v. Armedo-Sarmiento,* 524 F.2d 591, 592 (2nd Cir.1975); *United States v. Garcia,* 517 F.2d 272, 277 (5th Cir.1975). Defendants DeLuna and Spilotro, to assert any right to representation by Goodman, must waive their Sixth Amendment guarantees to effective assistance of counsel unhindered by conflicts, guarantees which in the circumstances of this case would otherwise require total disqualification of Goodman.

■ *United States v. Lawriw,* 568 F.2d 98 (8th Cir.1977), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978), describes the procedure required to elicit an acceptable waiver. In essence, defendant must be advised of his right to effective representation by separate counsel unimpaired by divided loyalties and advised of the dangers inherent in conflicts of interest. Defendants' attorney is duty bound to discuss these issues with defendants. In addition the court has an affirmative duty to make a detailed inquiry, addressing each defendant personally and advising each of the potential dangers of conflict-ridden representation. *See* Fed.R.Crim.P. 44(c); *Lawriw,* 568 F.2d at 104. To insure that defendants understand the nature of the situation, defendants should be at liberty to question the court on the nature and consequences of legal representation by their attorney and the entire procedure should be placed on the record for review. The court should elicit a narrative response which indicates in clear and unequivocal terms that defendant voluntarily, knowingly, and intelligently waives his right to conflict-free, effective representation of counsel. *Lawriw,* 568 F.2d at 104.

■ Pursuant to Rule 44(c) and *United States v. Lawriw, supra,* the court conducted a full inquiry on March 2, 1984.

The inquiry was similar to that required under Rule 11 for the taking of a guilty plea but included hypotheticals of conflicts which may arise. After advising DeLuna and Spilotro of their rights and of the dangers inherent in representation by Goodman, the court elicited a narrative response from both defendants.

At the hearing, the government also presented evidence and described situations which may give rise to conflicts. With respect to the government's *in camera* filings, the court finds that the evidence supports the government's compelling need to prevent disclosure until depositions of the witnesses are taken.

In *United States v. Duklewski,* 567 F.2d 255 (4th Cir.1977), the government objected to release of information given to the judge because "such disclosure would jeopardize extremely sensitive and important investigations which are presently being conducted by this office and by a federal grand jury. *Id.* at 256. The court, in upholding the government's position, stated that the judge, in securing an effective waiver, was not compelled to furnish the defendant with "full details of the communications made to him *in camera* by the United States Attorney ... but at least, he could with propriety have given the defendant sufficient information in 'generic terms' to have enabled the defendant to make an intelligent choice whether to waive the conflicts." *Id.* at 257.

The government in this case has stated that disclosure would pose a danger to the safety of those individuals whose identity would be revealed. *Cf. In Re Taylor,* 567 F.2d 1183, 1189 (2nd Cir.1977) (Court ordered disclosure when government's asserted interest was in maintaining secrecy of grand jury proceedings, not in protecting its witnesses from danger.) However, without revealing the identities of its witnesses, the government has substantially disclosed the contents of the filings.

Having reviewed the evidence submitted March 2, 1984, and the government's suggestions in opposition to disclosure, the court finds that disclosure would pose a serious danger to the safety of these witnesses and that their identity must be protected until depositions are taken. In addition, because the government revealed in detail the contents of the *in camera* filings to the defendants, the court finds that further disclosure is unnecessary either for defendants' waiver or for an adequate defense to the disqualification motion.

The court finds that Carl DeLuna and Anthony Spilotro are competent and desirous of making a voluntary, knowing, and intelligent waiver. Goodman represented DeLuna in a prior related trial before this court only last year and has established a long-standing attorney-client relationship with both defendants. He has therefore developed both the expertise and rapport necessary to aid defendants in the understanding of their rights. While Goodman indicates that while he perceives no actual conflicts, he has advised his clients of their rights and discussed with them the possibility of conflicts of interest.

The court notes the inherent difficulties of presenting to defendants the specific conflicts that may arise in a case of this complexity. The instant case involves fourteen defendants charged in numerous counts in an indictment detailing a sophisticated conspiracy to divert thousands of dollars and to control unlawfully enterprises located in Las Vegas, Nevada. Nevertheless, the court is convinced that defendants DeLuna and Spilotro are sufficiently aware of conflicts arising from their attorney's possession of confidential information of former clients associated with the Argent Corporation, from the possibility of divided loyalties, and from the attorney's possible knowledge of facts leading to the indictments. As full a disclosure of conflicts as possible was made under the circumstances of this case.

Both defendants represented by Goodman stated that they were fully aware of their constitutional right to counsel unencumbered by conflicts and the possible consequences, including conviction, of waiving those rights. They thus demonstrate that they adequately perceive these circum-

stances and are willing to have circumscribed whatever rights they might otherwise have to a defense unimpaired by conflicts and ineffective assistance of counsel. Both voluntarily, knowingly and intelligently waived their rights to effective conflict-free representation in order to retain Oscar Goodman as their lawyer. Both urged the court to recognize their right under the Sixth Amendment to be represented by counsel of their choice.

Should defendants DeLuna and Spilotro persist in their desire to have Goodman represent them, the court, to ensure an effective waiver, instructs defendants Carl DeLuna and Anthony Spilotro to execute affidavits which further indicate that Oscar Goodman has reviewed with them this order and their rights. Should defendants have further questions, they should so indicate in the affidavit, and the court will conduct further inquiry.

### Balancing Opposing Interests

While DeLuna and Spilotro have effectively waived their Sixth Amendment right to effective representation free from conflicts, their waivers do not assure them of an absolute right to retain Goodman as their counsel. Their waivers cannot operate to sanction violations of the Code of Professional Responsibility, particularly where there is good cause to believe conflicts will arise which adversely affect other persons' rights.

■ The district court is responsible for supervising members of its Bar, for maintaining public confidence in the legal profession, and for insuring the integrity of the judicial proceeding. *United States v. Agosto,* 675 F.2d at 969. In determining whether the right of the accused to counsel of his choosing should be honored in a particular case, the court "must balance the defendant's constitutional right against the need to preserve the highest ethical standards of professional responsibility." *United States v. Cunningham,* 672 F.2d at 1070. It is the court's responsibility to preserve this balance by accommodating as fairly as possible the interest of all defend-

ants, the witnesses, the government, and the public. *Id.* at 1071.

Each of these interests must be considered in light of the various conflicts asserted by the government—multiple representation, successive representation, Goodman's attorney-client relationship with adverse witnesses, and Goodman's knowledge of facts and personal involvement with incidents leading to the indictment—and in light of the professional ethical considerations dictated by the Code of Professional Responsibility (Code). The canons of professional ethics applicable in this case are Canon One (maintaining integrity and competence in the legal profession); Canon Four (preserving confidences and secrets of a client); Canon Five (exercise of independent professional judgment); Canon Six (representing a client competently); Canon Seven (representing a client zealously within the bounds of the law); and Canon Nine (avoiding even the appearance of impropriety).

■ A defense attorney must be free to use all his skills to provide the best possible defense for his client, and the mere existence of a temptation in the abstract or the mere potential for conflict is so grave that ordinarily a lawyer should withdraw. *See* American Bar Association Standards for Criminal Justice, Standard 4–3.5(b) (2d ed. 1980). In this case, counsel has not withdrawn, and, because defendants have effectively waived their rights to conflict-free representation, the court, in considering the interests of defendants DeLuna and Spilotro, is concerned only with balancing their rights to an attorney with whom they have a long-standing relationship and whose expertise defendants claim may prove invaluable to their defense against the potential danger to the other defendants, to the integrity of the administrative process, and to the government witnesses who are Goodman's former clients. The sole issue remaining is whether this balance requires disqualification of Goodman by the court in the exercise of its responsibility to insure compliance with ethical

standards and to insure the fairness of the trial.

■ The government first argues that Oscar Goodman, in the representation of Carl DeLuna and Anthony Spilotro, may be forced to reveal confidential communications of numerous government witnesses associated with the Argent Corporation and admitted by Goodman to be former clients. There is a presumption that an attorney receives confidential communications in the course of his representation of a client. *United States v. Shepard*, 675 F.2d at 980. Effective cross-examination might reasonably be expected to involve the use of this confidential information, thus infringing on the witness' rights to the attorney-client privilege, and violating Canon Four of the Code. *United States v. Siegner*, 498 F.Supp. 282, 285 (E.D.Pa.1980). As previously stated, there is also the danger that, because of the attorney's obligation to maintain confidences, he will not effectively represent his current client, the accused. *Id.* at 979. He may either fail to cross-examine his former client fully or fail to impeach him for fear of misusing confidential information, thus violating Canon Five (attorney's duty to exercise independent professional judgment), Canon Six (duty to represent a client competently) and Canon Seven (attorney's duty to represent a client zealously within bounds of the law). *See United States v. Agosto*, 675 F.2d at 971.

In the present case, Goodman maintains that he was entrusted with no confidences and possesses no facts which will impair his ability to represent the defendants. However, at least one of Goodman's former clients who will be called as a government witness affirmatively supports the government's motion stating, "I believe that certain confidential information given by me to Mr. Goodman and his partners would be used contrary to my interests in questioning me." *Affidavit of Frank Cullotta*, filed March 9, 1984. The evidence presented to the court and the government's summary of *in camera* filings indicates that two potential witnesses, both former clients, are unwilling to waive their attorney-client privilege. Their endorsement of the government's motion must be given due consideration. *See United States v. James, supra; United States v. Ostrer*, 597 F.2d 337 (2nd Cir.1979).

The government has an interest in protecting its witnesses from unfair attacks. *United States v. James*, 708 F.2d 40 at 46 (2nd Cir.1983). Given these witnesses' association with the Argent Corporation and their persistent assertion of the attorney-client privilege, the court finds that the presumption recognized in *Shepard, supra*, has not been overcome and that cross-examination by Goodman would seriously encroach upon the interests of the government in protecting its witnesses and of the witnesses themselves. These witnesses are entitled to full protection to preserve the confidentiality of privileged communications with their attorney, *United States v. Armedo Sarmiento*, 524 F.2d at 593, particularly in light of one former client's indication that he views the risk of intrusion as substantial. Their interests cannot be adequately safeguarded without disqualifying Goodman and any attorney presently or formerly his law partner from examining them at any time in the course of these proceedings.

The government next advances the argument that Oscar Goodman has personal knowledge of facts pertinent to this case and, therefore, he might reasonably be asked to testify by either side. "An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The role of an advocate is to advance or argue the case of another, while that of a witness is to state facts objectively." *Ethical Consideration* 5–9. Disciplinary Rule 5–102 states that "if ... a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial ... except ... in the circumstances enumerated in D.R. 5–101(b)(1) through (4). If ... he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representa-

tion until it is apparent that his testimony is or may be prejudicial to his client."

In this case, the government claims that Goodman and his former law partner, Jay Brown, may be called as a witness to rebut, corroborate, or explain facts surrounding (1) DeLuna's use of Goodman's private law office to meet with Allen Glick, then owner of Argent casinos, to force him to sell his interest in the casinos, (2) Jay Brown's negotiations with Glick for the purpose of acquiring the Argent casinos, (3) a conversation between Agosto and DeLuna where Agosto states that Goodman asked him to intercede with and influence the gaming authorities to prevent revocation of a license, (4) a conversation between Nick Civella and Goodman concerning public turmoil created by Rosenthal, Goodman's client, and the possibility that he would "snitch," and (5) testimony by Agosto in a prior related case that Jay Brown asked Agosto to appear before the Nevada Gaming Control Authorities "to lie." *See Government's Statement of Fact*, filed March 12, 1984. Given the negative inferences which may be drawn from this evidence, it is reasonable to assume that even if the government does not call Goodman as a witness, other defendants may call Goodman to rebut inferences of impropriety or to provide innocent explanations on behalf of their clients.

At the hearing held March 2, 1984, all twelve defendants endorsed Goodman as attorney for DeLuna and Spilotro in this case. However, the court cannot accept these endorsements as waivers of any rights. First, only one defendant affirmatively stated that based on the present state of the record, he would not call Goodman as a witness. Second, the court notes that in a prior related case where the government did not contend that Goodman was involved with incidents leading to the indictment, some of these same defendants nevertheless on appeal of that case now assert prejudice to their defense caused by frequent references in the testimony to Goodman's association with Joseph Agosto, his former client and chief government witness. Third, these twelve defendants have no standing to object to this court's disqualification of Goodman since each of them is represented by counsel independent of Goodman and their Sixth Amendment right to counsel of their choice is being protected. Thus, the court finds that it is only Goodman's continued presence, not his absence, that could in any way prejudice the rights of these twelve defendants to a fundamentally fair trial. In fact, under the circumstances in this case, Goodman's presence may work to their considerable detriment. He may be expected to present defenses on behalf of his clients which are inconsistent with those of the other defendants, to implicate the other defendants by reason of what the government contends is his close connection with the operative facts in the case, or to testify as a witness on behalf of the government or some defendant. To sanction Goodman's continued representation at trial in this case "raises the specter of deliberate abuse by defendants and their attorneys, who may seek to avoid disqualification in cases of conflict of interest in the hope of later seeking reversal of a conviction...." *United States v. Siegner*, 498 F.Supp. at 287.

If Goodman were not called to the stand as a witness, by either the government or one of the twelve remaining defendants, it is entirely possible that a different defense counsel for DeLuna and Spilotro might wish to call him to testify on his client's behalf. *See United States v. Siegner*, 498 F.2d at 286. Goodman's continued representation of defendants would preclude his testifying as a defense witness in their behalf pursuant to Disciplinary Rule 5–102.

Finally, even if Goodman were not called to the stand, evidence of his involvement would nevertheless make him an "unsworn witness." *See United States v. Cunningham*, 672 F.2d at 1074–75. This fact could be argued in summation by any party. "He would implicitly be testifying as to his version of the conversation." *Id.* at 1074.

Defendants' waiver does not eliminate this court's responsibility to balance their rights with the court's interest in preserv-

ing the integrity of the administration of justice. *United States v. Snyder*, 707 F.2d 139 (5th Cir.1983). Both Goodman and his former law partner, Jay Brown, are potential witnesses in this trial. Thus, while the prejudicial effect of such a reality is impossible to predict, Goodman's presence as trial counsel not only violates the American Bar Association Standards of Criminal Justice, but creates a grave and unnecessary risk of prejudice to other parties who should not be precluded from calling him as a witness.

The government next argues that Goodman must be disqualified because his alleged knowledge of facts leading to the indictment supports a reasonable possibility that an impropriety has occurred. Canon Nine holds an attorney to a standard that prohibits not only actual impropriety, but conduct that may simply appear to be improper. Where there is at least a reasonable possibility that some specifically identifiable impropriety occurred, and where there is a likelihood of public suspicion of misconduct, the social interests served by a lawyer's continued participation are outweighed by the public interest in maintaining the integrity of the trial process. *United States v. Snyder*, 707 F.2d 139, 145 (5th Cir.1983) (Court disqualified indicted co-conspirator).

In *United States v. Hobson*, 672 F.2d 825 (11th Cir.1982), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982), the court applied Canon Nine to a situation where proffered testimony indicated that an attorney participating in the case was aware of a smuggling scheme. The court held that the government need not prove an actual wrong, only a reasonable possibility of impropriety, *Id.* at 828, and the likelihood of public suspicion arising from the expected testimony outweighed the defendant's interest in representation by an attorney of his choice. The fact that the testimony might have been rebutted did not remove the likelihood of public suspicion of impropriety. *Id.* at 829.

In the present case, the government's evidence, consisting of numerous tran-

scripts, tapes, and notes depicting the involvement of Oscar Goodman or his former law partner, Jay Brown, in incidents leading to the indictment, dictates that this court find a reasonable possibility of impropriety and a likelihood of public suspicion of misconduct. While the court makes no finding of actual impropriety, it is clear that the government's evidence may portray both as having engaged in unethical conduct, thus impugning their credibility in the eyes of the jury and reflecting adversely on the whole panoply of defendants.

Representation of defendants in these circumstances thus constitutes a breach of professional ethics, invites disrespect for the integrity of the court and its process, and leaves the trial open to future attacks over the adequacy of waivers or the fairness of the proceedings. The possible impropriety is beyond the pale of the defendant's right to waive because it "involves the public perception of the lawyer and the legal system rather than some difficulty in the attorney's effective representation of [the defendant]. *United States v. Snyder*, 707 F.2d at 145 (quoting *United States v. Hobson*, 672 F.2d at 829).

Defendant's right to counsel of his choice must give way where its vindication creates serious risk of undermining public confidence in the integrity of the legal system. *See United States v. Hobson*, 672 F.2d at 828. Canon Nine was designed to prevent the kind of erosion of that confidence that would arise by Goodman's continued representation. "Certainly, the Sixth Amendment should not be interpreted to allow a defendant to sanction a breach of ethical duties when such duties serve the public interest as well as the client's." *United States v. Siegner*, 498 F.Supp. at 287 (quoting *United States v. Dolan*, 570 F.2d at 1183).

While DeLuna's and Spilotro's Sixth Amendment right to counsel of their choice is recognizably important, the government's interest in disqualification is compelling, supported by prior case law and by the evidence. In this case, the scales weigh heavily against the right of the de-

fendants. Having considered Goodman's position as counsel for government witnesses, his posture as a potential witness, and his possible involvement in incidents leading to the indictment, the court finds that Goodman's presence at trial as attorney for DeLuna and Spilotro will prejudice the rights of government witnesses, other defendants, and the public.

When faced with the potential conflicts from successive representation or former representation of witnesses, the Eighth Circuit has stated, "the chosen method for dealing with a potential conflict, in the absence of an acceptable waiver, is the one which will alleviate the effects of the conflict while interfering the least with defendant's choice of counsel." *United States v. Agosto*, 675 F.2d at 970. The court shall apply this rule, the "chosen method," even in the presence of a waiver from co-defendants DeLuna and Spilotro because neither can waive the rights of other defendants, of witnesses, and of the public.

In considering whether there "exists a means of eliminating the potential conflict[s] less burdensome than [total] disqualification," *Agosto*, 675 F.2d at 973, the court adopts the limited disqualification proposal affirmed by the Second Circuit in *United States v. Cunningham*, 672 F.2d 1064 (2nd Cir.1982). In *Cunningham*, the government moved to disqualify defendant's attorney, Kennedy, on the basis of events that occurred during the investigation that led to the indictment. The government pointed out that Kennedy's client, a lawyer, and another defendant were charged with having conspired to obstruct a hearing on the authenticity of a memorandum. The government stated that it would call defendant's receptionist who would testify that defendant's attorney, Kennedy, told her the subpoenaed envelopes were "safe" and that the government would have to find them if it wanted them.

The government argued that Kennedy ought to be a witness at defendant's trial to explain the receptionist's testimony. It argued that Kennedy should be disqualified pursuant to "Disciplinary Rule 5–101(B) and 5–102(A) of the American Bar Association Code of Professional Responsibility which prohibits a lawyer from accepting employment in pending litigation if he knows that he or a lawyer in his firm ought to be called as a witness." *Id.* at 1069.

Defendant opposed the motion, stating that the receptionist's testimony would be inadmissible at trial. Further, he had effectively waived his right to call his attorney as a witness and his right to be represented by counsel unencumbered by conflicts. Like DeLuna and Spilotro, he urged the court to recognize his constitutional right to be represented by counsel of his choice. *Id.* at 1069–70.

The trial court concluded that Disciplinary Rule 5–102(A) required disqualification of Kennedy but it limited the disqualification to participation in the trial itself. *Id.* at 1070. On appeal, the Second Circuit agreed that "Disciplinary Rule 5–102(A) would require that Kennedy and his law firm withdraw as trial counsel," and found that "the disadvantage to [defendant] as a result of the disqualification is reduced considerably by the limited nature of the disqualification." *Id.* at 1074. In so holding, the court stated,

> it is only [defendant's] right to have Kennedy appear at trial and be identified as counsel of record that is at issue, not his more significant right to have Kennedy participate in his defense.

> The government's interest in disqualifying Kennedy, on the other hand, may be particularly strong … Kennedy's statements are subject to an interpretation that would readily support the charges against [defendants] … waivers would not avoid the impropriety foreseen by the drafters of the Disciplinary Rules…."

*Id.*

Under the analogous circumstances of this case, the court finds that the novel approach set forth in *Cunningham* fairly balances the rights of all involved. It reduces considerably the disadvantage to Carl DeLuna and Anthony Spilotro of a

total disqualification, and balances their right to have Goodman as their attorney with the other defendants' right to a fundamentally fair trial, the public's interest in maintaining the integrity of the judicial process, and the government's interests in preserving confidences of its witnesses arising out of their attorney-client relationship with Goodman.

Accordingly, it is

ORDERED that Oscar Goodman may participate in all aspects of the defense except the taking of depositions of present and former clients and the actual trial. In assisting the attorney who will conduct cross-examination of these clients, it is assumed that Goodman will observe in the strictest manner whatever confidences may have been reposed in him. He may participate in the pretrial process and pretrial discovery, he may advise the attorney who will defend the case, and he may be present in the courtroom so long as he does not appear as counsel and is not situated at the counsel table. Goodman will not be an attorney of record at trial, and he will not conduct the defense for any defendant at trial. It is further

ORDERED that separate co-counsel not associated with Oscar Goodman shall enter their appearances for Anthony Spilotro and Carl DeLuna on or before March 30, 1984. Each co-counsel shall attend pretrial conferences and shall assure the court that he or she will be fully prepared to represent the defendants as trial counsel. It is further

ORDERED that defendants Carl DeLuna and Anthony Spilotro shall execute affidavits, indicating (1) whether Oscar Goodman has reviewed with them this order and their rights, (2) whether defendants understand the dangers of their waivers, and (3) whether they have further questions to address to the court.