Frank D. RODRIGUEZ, Petitioner,

v.

DISTRICT COURT for the CITY AND COUNTY OF DENVER and Honorable Lynne Hufnagel, one of the judges thereof, Respondents.

No. 85SA98.

Supreme Court of Colorado,
En Banc.

May 19, 1986.

As Modified on Denial of Rehearing
June 23, 1986.

David F. Vela, Public Defender, David G. Eisner, Chief Deputy Public Defender, Robin J. Desmond, Michael J. Heher, Deputy State Public Defenders, Denver, for petitioner.

Norman S. Early, Jr., Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for respondents.

James F. Smith, Dist. Atty., Seventeenth Judicial Dist., Steven L. Bernard, Chief Trial Deputy, Brighton, for amicus curiae Colorado Dist. Attorneys' Council.

KIRSHBAUM, Justice.

The petitioner, Frank D. Rodriguez, has filed this original proceeding challenging orders of the respondent trial judge (the respondent) denying the petitioner's motion for recusal of the respondent and granting a motion by the People to disqualify the office of the public defender from representing the petitioner. The rule is discharged in part, made absolute in part, and the cause is remanded with instructions.

On November 14, 1984, the petitioner was arrested by Denver police officers as a result of their investigation of the death of a victim of a kidnapping. Late that evening deputy public defenders Philip Cherner and Robin Desmond, together with an investigator, traveled to the Denver police headquarters and requested permission to speak with the person who had been arrested in connection with the alleged kidnapping and homicide. They did not see the petitioner that evening. The following morning, at an advisement proceeding, Desmond and chief deputy public defender David Eisner were appointed co-counsel by the judge presiding at that proceeding to represent the petitioner.

In early February 1985, Margie Marquez, who at the time was in custody in connection with two separate Denver felony theft cases, contacted the Denver district attorney's office and requested a meeting with

representatives thereof. Marquez was then represented on the theft charges by deputy public defender David Joyce. On February 6, 1985, Marquez met with deputy district attorneys Michael Little and Michael Kane and police personnel. At that time she stated she had documents tending to incriminate the petitioner in the kidnapping and murder charges which by then had been filed against him. Another meeting between Marquez and representatives of the Denver district attorney's office was scheduled, at which time Marquez would produce the documents. Her attorney, Joyce, was not present at these meetings.

On February 14, 1985, Marquez and Joyce appeared at a previously scheduled hearing in connection with the Denver theft cases. At the outset of the hearing, deputy district attorney Little informed the presiding judge that a possible conflict of interest had developed between Marquez and the public defender's office and that he, therefore, requested a continuance of the hearing. Joyce then stated on the record that he was informed that Marquez had initiated conversations with Little, that he did not know the content thereof, but that he "had an idea about what this is all about." Joyce then stated that if he were correct, there would be a conflict. The presiding judge granted the People's request to continue the hearing.

On the evening of February 14, Joyce visited his client, Marquez, at the Denver County Jail. According to the testimony of Marquez, Joyce did not approve of what she was doing and became angry with her. Marquez also testified that Joyce indicated to her he might have to withdraw as her

counsel. The next day, Marquez delivered several letters to the prosecution which alleged certain information about the kidnapping and murder charges pending against the petitioner. At some time during that same day, Joyce requested and was granted permission to withdraw as counsel for Marquez in the theft cases. The two theft cases against Marquez were subsequently dismissed at the request of the People.

In March 1985, the petitioner filed motions to dismiss, a motion to disqualify the Denver district attorney's office from participating in this case, and a motion for discovery. These motions alleged, among other things, violations of ethical standards by the prosecution and violations of the petitioner's constitutional rights to due process of law by police officials and the prosecution. The petitioner also filed motions to discover communications between the respondent and the Honorable J. Stephen Phillips, another trial judge who was to preside over portions of this case, including jury selection proceedings; for appointment of a judge other than the respondent to hear this discovery motion; for substitution of judge(s);[1] and for substitution of the respondent. During this time period, the People filed a motion to disqualify the office of the public defender as attorneys for the petitioner.

In the motion for substitution of judge(s), filed prior to the filing of motion for substitution of the respondent, the petitioner alleged that prejudice existed on the part of Judge Phillips with regard to deputy public defender Eisner and asserted that such prejudice had been demonstrated

---

1. This motion, dated March 18, 1985, was directed to substitution of Judge Phillips and not substitution of the respondent. In connection with that motion, several affidavits were filed, including the affidavit of Robin Desmond, dated March 20, 1985. Desmond's affidavit stated in relevant part:

I had a conversation with [the respondent] on a date and place uncertain, but which I believe was late October, early November, 1984, following the funeral of Jonathan Olom. During that conversation the [case] of *People v. Drake* was discussed. [The respondent] re-

lated to me that in a conversation with Judge Phillips, Judge Phillips explained that he had denied the Defendant's motion for individual sequestered voir dire in the *Drake* case, because he knew that the Colorado Supreme Court would not permit an execution to occur and therefore he didn't need to spend the extra time on jury selection. [The respondent] then related to me that she agreed with Judge Phillips regarding the Supreme Court and would also select a jury on a death case in the same manner as was done in the *Drake* case.

during the course of proceedings in a case in which Eisner had participated as defense counsel and over which Judge Phillips had presided. The motion also stated that, pending further discovery, the public defender might later seek to disqualify the respondent from participating in the instant case, in part, on the basis of conversations between the respondent and Judge Phillips concerning the processing of this case. The motion for substitution of judge(s) also stated that counsel for the petitioner was filing a discovery motion "to determine the extent of the discussions between these two judges concerning ... this particular counsel."

Judge Phillips denied the petitioner's motion for substitution of judge(s). He also denied the motion for discovery insofar as it related to him. The respondent denied the petitioner's request for appointment of a different judge to hear the discovery motion. In the course of denying the petitioner's discovery motion insofar as it pertained to her, the respondent provided the following information:

1. The respondent had not ever spoken to defense counsel Eisner before his entry in this case, nor had the court ever met him socially before that time.

2. The respondent was aware that Judge Phillips had tried a particular capital case, and as a result of that case some difficulties between Judge Phillips and Eisner had arisen, but was not aware of what the difficulties were. The respondent was also aware of a letter sent to State Public Defender David Vela by Judge Phillips and of a letter in response by Vela but was not aware of the content of the letters.

3. That the respondent had not and did not intend to read the affidavits attached to the defense's motion for substitution of judge(s), except the respondent had read the affidavit of Desmond. With regard to this latter affidavit, the respondent stated that whether she had personal opinions concerning the death penalty was irrelevant since respondent would uphold the law regardless of what her personal opinions might be.

4. Any prior communications between the respondent and Judge Phillips concerning the division of responsibility in this case did not involve discussion of any counsel but merely involved procedural matters, except that a joint decision was made that all communication between counsel and the court should be on the record.

Subsequent to this ruling, the petitioner filed his motion for substitution of the respondent. Accompanying this motion was the same affidavit of Desmond which had previously been filed with the petitioner's motion for substitution of judge(s). No other affidavits were filed to support the motion for substitution of the respondent. The respondent's denial of this motion as well as the respondent's order granting the People's motion to disqualify the office of the public defender from representing the petitioner are challenged by this original proceeding.

## I

Section 16–6–201(3), 8 C.R.S. (1978), states in pertinent part that motions for change of a judge "must be verified and supported by the *affidavits of at least two credible persons....*" *Id.* (emphasis added); *see also* Crim.P. 21(b). We do not agree with the petitioner's contention that the respondent's partial denial of his discovery motion prevented him from obtaining further information for additional affidavits to substantiate the alleged appearance of impropriety resulting from communications between the respondent and Judge Phillips, and that the respondent's ruling concerning the discovery motion was in and of itself indicative of prejudice with respect to the petitioner's case. The fact that the respondent granted the petitioner's discovery motion in part only, whether erroneous or not, fails to suggest any bias or prejudice on the part of the respondent with regard to this case or any issue or participant therein. *See Altobella v. People*, 161 Colo. 177, 420 P.2d 832 (1966). More importantly, the respondent did consider the allegations in the motion and in

Desmond's affidavit but found them insufficient to require disqualification.

A motion and accompanying affidavits requesting disqualification of a trial judge from participating in a case properly assigned to that judge must state facts from which it may be reasonably inferred that the judge has a bias or prejudice with respect to the case, a party or counsel. *Estep v. Hardeman,* 705 P.2d 523 (Colo. 1985); *People v. Botham,* 629 P.2d 589 (Colo.1981); *People v. District Court,* 192 Colo. 503, 560 P.2d 828 (1977); Crim.P. 21(b)(1). In reviewing any motion and affidavits addressing this question, the trial court must consider both the actuality and the appearance of bias or prejudice and should recuse itself whenever it believes its impartiality can reasonably be questioned. *Botham,* 629 P.2d 589; *see* ABA Standards for Criminal Justice, Special Functions of the Trial Judge, 6–1.7 (2d ed. 1982).

Considering the allegations of Desmond's affidavit and those in the substitution motion as true, *People v. District Court,* 192 Colo. 503, 560 P.2d 828, speculation concerning possible appellate response to a hypothetical review of this state's capital punishment statute does not provide the basis for an inference of any prejudice by the respondent with respect to the petitioner, his case or any issue therein. *See Walker v. People,* 126 Colo. 135, 248 P.2d 287 (1952). The respondent's comments, as set forth in the affidavit, implied no position of her own with respect to these issues. No bias against any participant or issue in this case may reasonably be imputed to the respondent on the basis of the isolated comments attributed to her in the affidavit. We conclude that the facts alleged in the motion and in the affidavit in support thereof do not permit any reasonable inference of bias, prejudice or other ground for disqualification of the respondent in this case.

## II

The People's motion to disqualify the office of the public defender asserted that continued representation of the petitioner by that office would violate Canons 4, 5, and 7 of the Code of Professional Responsibility (the Code) because that office would have access to privileged communications of Marquez for use in cross-examining her. During argument on the motion the People also indicated that Joyce would be called at trial as a witness adverse to the petitioner to rehabilitate the credibility of Marquez in the event Marquez' credibility becomes an issue in the case. The respondent concluded that representation of the petitioner by the office of the public defender had created and would continue to create impermissible conflicts of interest. The respondent also concluded that no waiver of conflict-free representation could be effective under the circumstances of this case. While the record supports the respondent's conclusion that a conflict of interest within the public defender's office had arisen, we conclude that the petitioner is not precluded from waiving conflict-free representation.

### A.

A central problem in this case is the relationship between the office of the public defender and prosecution witness Margie Marquez. While being represented by public defender Joyce in two pending felony cases, Marquez independently contacted the prosecutor and offered to disclose information allegedly prejudicial to the petitioner. This information consisted of letters written by the petitioner to Marquez allegedly describing the petitioner's participation in events directly related to the offenses with which he is charged. Joyce, prior to his voluntary withdrawal as attorney for Marquez, expressed some opposition to her conduct. These activities immediately placed the office of the public defender in an impossible dilemma. The attorney representing the petitioner will by necessity be required to interrogate Marquez at trial.

Canon 4 of the Code requires the public defender to maintain inviolate all privileged communications received from Marquez in the course of the attorney-client relation-

ship. DR4–101; EC4–6. Canon 7 of the Code requires the public defender to represent the petitioner "zealously within the bounds of the law." DR7–101(A)(1). Any less vigorous advocacy could render ineffective any legal assistance provided the petitioner in defense of the first degree murder charges filed against him.

■ Since Marquez and Joyce were in an attorney-client relationship, it must be presumed that she reposed confidences in her attorney. *Osborn v. District Court,* 619 P.2d 41 (Colo.1980). Joyce's ethical obligation to preserve the confidences of his client obtained during the professional relationship continues after the termination of that relationship. DR4–101; EC4–6. Furthermore, any confidential information obtained by Joyce from Marquez must be imputed to the other members of the public defender's staff. *Allen v. District Court,* 184 Colo. 202, 519 P.2d 351 (1974); DR5–105(D). The petitioner's present counsel, therefore, must be deemed to have information concerning Marquez that may not be available to the prosecution and that could prove significant at trial, where the credibility of Marquez will be an issue for jury consideration.

At trial, a public defender might well be restricted in any examination of Marquez because of the duty to maintain the confidentiality of information received by Joyce from Marquez. *See Allen,* 184 Colo. 202, 519 P.2d 351. On the other hand, a public defender might also be tempted to use certain confidential information obtained from Marquez to impeach her trial testimony. Thus, an inherent conflict arose from the fact of the public defender's dual role as prior attorney to Marquez and present counsel for the petitioner. *See United States v. Agosto,* 675 F.2d 965 (8th Cir.), *cert. denied,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982); *United States v. Provenzano,* 620 F.2d 985 (3d Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); *United States v. Tocco,* 575 F.Supp. 100 (N.D.Ill.1983). *See generally* G. Lowenthal, *Successive Representation by Criminal Lawyers,* 93 Yale L.J. 1

(1983); *Developments in the Law—Conflicts of Interest in the Legal Profession,* 94 Harv.L.Rev. 1244, 1377 (1981). Indeed, Joyce acknowledged a probable conflict of interest as far as his continued representation of Marquez was concerned before he had any discussions with her concerning her decision to disclose information about the petitioner to the prosecution.

The People also contend that an additional difficulty is presented by the fact that at the petitioner's trial his present attorney will probably be required to cross-examine Joyce. The People argue that because such testimony would prove prejudicial to the petitioner, DR5–102(B) of the Code requires the public defender's office to cease representing the petitioner.

■ When, during the course of representing a client, an attorney learns that he or she or a member of his or her firm may be required to give testimony prejudicial to the client, DR5–102(B) establishes the following guidelines with regard to the attorney's continued role:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

The rule in essence requires an attorney to cease representing a client at such time as the attorney's ability to champion the cause of the client becomes substantially impaired. As we observed in *Riley v. District Court,* 181 Colo. 90, 95, 507 P.2d 464, 466 (1973), "a lawyer cannot act as an advocate on behalf of his client, and yet give testimony adverse to the interests of that client in the same proceeding."

In *Williams v. District Court,* 700 P.2d 549 (Colo.1985), we examined the effect of DR5–102(B) in the context of criminal proceedings. Prior to trial, the prosecutor in *Williams* filed subpoenas to compel testimony from the defendant's deputy public defender and others. The deputy public defender was representing the defendant

on the pending criminal charge. The defendant filed a motion to quash the subpoenas, which motion was denied by the trial court. In an original proceeding filed by the defendant to obtain relief from the trial court's order, we determined that to justify a subpoena of an attorney representing a defendant in pending criminal prosecutions the prosecution must demonstrate on the record the existence of the following three factors:

> (1) that defense counsel's testimony will be actually adverse to the accused; (2) that the evidence sought to be elicited from the lawyer will likely be admissible at trial under the controlling rules of evidence; and (3) that there is a compelling need for such evidence, which need cannot be satisfied by some other source.

*Id.* at 555–56 (footnotes omitted). In applying those factors to the circumstances presented in *Williams,* we directed the trial court to quash the subpoena served on the defendant's attorney. This test is equally applicable when the question of an attorney's continued representation of a defendant in criminal proceedings is raised by means of a prosecutorial motion to disqualify the attorney because the attorney will testify at the defendant's trial.[2]

■ The trial court did not have the benefit of our decision in *Williams* at the time it entered its order in this case. However, the record of the proceedings contains sufficient evidence to persuade us that the prosecution failed to meet its burden of proof to establish that the public defender's office must be disqualified from further representation of the petitioner because

Joyce might be a witness at trial. Joyce will be examined concerning his discussion with Marquez about the petitioner's case. Similar evidence will be obtained from Marquez. Thus, no compelling need has been demonstrated for any testimony from Joyce on this issue. Furthermore, some of Joyce's testimony may or may not be admissible, depending on whether and to what extent the prosecution or Marquez objects to such testimony. Finally, depending on Marquez' testimony, the evidence may or may not be adverse to the petitioner. Given these circumstances, we conclude that the prosecution failed to meet its burden of establishing a violation of DR5–102(B) sufficient to require the removal of the public defender from further participation in this case.[3]

### B.

■ The petitioner asserts that even though a conflict of interest exists which might prohibit the public defender's office from representing him, the petitioner's willingness to waive conflict-free representation in this capital case should prevent such disqualification. We agree.

A defendant's right to be represented by counsel of choice is grounded in the jurisprudence of the sixth amendment to the United States Constitution and is entitled to great deference. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *United States v. Curcio,* 680 F.2d 881 (2d Cir.1982); *People v. Castro,* 657 P.2d 932 (Colo.1983). This guarantee reflects the substantial interest of a defendant in retaining the freedom to select an

---

**2.** In *Williams,* we noted that denial of a motion to quash a prosecutorial subpoena served on an accused's attorney would pose serious ethical problems for that attorney and would most likely result in the subpoenaed attorney's withdrawal as counsel for the accused under DR5–102(B). Thus, we concluded that "the act of subpoenaing defense counsel is itself ... the functional equivalent of a motion to disqualify [under DR5–102(B) ]." *Williams,* 700 P.2d at 555.

**3.** In ruling on the People's motion to disqualify the office of the public defender, the respondent also determined that various other potential conflicts of interest could arise from continued representation of the petitioner by the public defender's office. For example, the trial court observed that deputy public defenders Cherner and Desmond might be required to testify at trial, and that the public defender's office may have represented the petitioner in prior criminal proceedings relative to the habitual offender counts contained in the information filed against the petitioner. Our review of the record satisfies us that those potential conflicts are not sufficient to warrant disqualification of the public defender's office in the circumstances of this case.

attorney the defendant trusts and in whom the defendant has confidence. Thus, a defendant may waive the right to conflict-free representation, even though by such waiver the defendant in all probability will receive representation which is less effective than the representation which could be provided by conflict-free counsel. *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *United States v. Unger*, 700 F.2d 445 (8th Cir.1983); *United States v. Armedo-Sarmiento*, 524 F.2d 591 (2d Cir.1975). Because the preservation of this freedom of choice of counsel is a central feature of our adversary system, it is of substantial importance to the integrity of the judicial process.

However significant the right to counsel might be, the sixth amendment does not guarantee an absolute right to counsel of choice in all cases. *United States v. Cunningham*, 672 F.2d 1064 (2d Cir.1982); *Armedo-Sarmiento*, 524 F.2d 591; *see Williams*, 700 P.2d 549; *People v. Blalock*, 197 Colo. 320, 592 P.2d 406 (1979). In some circumstances, fundamental considerations other than a defendant's interest in retaining a particular attorney are deemed of controlling significance. These considerations relate to the paramount necessity of preserving public confidence in the integrity of the administration of justice. *See United States v. Hobson*, 672 F.2d 825 (11th Cir.), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982).

■ The judicial process must be, and must be perceived to be, a process that is fundamentally fair to all parties—a process in which those who participate may assume that no party will be permitted to benefit from unfair advantage. When a defendant's desire to retain a particular attorney would significantly undermine public confidence in the impartiality and fairness of the judicial process because of the circumstances of the case, the defendant may be precluded from achieving that goal. *United States v. Garrett*, 727 F.2d 1003 (11th Cir.

1984), *aff'd*, ⸺ U.S. ⸺, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985); *United States v. DeLuna*, 584 F.Supp. 139 (W.D.Mo.1984); *Osborn*, 619 P.2d 41; *see Provenzano*, 620 F.2d 985; *United States v. Dolan*, 570 F.2d 1177 (3d Cir.1978); *Tocco*, 575 F.Supp. 100; *United States v. Seigner*, 498 F.Supp. 282 (E.D.Pa.1980); *see also Blalock*, 197 Colo. 320, 592 P.2d 406.

■ Most courts have developed a balancing test to determine under what circumstances concerns for public confidence in the integrity of the judicial process may be found to outweigh the interest of a defendant in being represented by a particular attorney whose effectiveness may be impaired by the presence of conflicts of interest involving rights of a former client-witness. *See, e.g., United States v. James*, 708 F.2d 40 (2d Cir.1983); *Agosto*, 675 F.2d 965; *Cunningham*, 672 F.2d 1064; *Armedo-Sarmiento*, 524 F.2d 591; *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975); *see also* G. Lowenthal, *supra.* Under this approach, the trial court must evaluate the defendant's preference for particular counsel, the witness' right to confidentiality of communications, and the public's interest in maintaining the integrity of the judicial process as well as the nature of the particular conflict of interest involved.[4] Other courts, while implicitly engaging in a balancing process, have expressly emphasized the nature of the conflict of interest itself in determining whether a knowing waiver of conflict-free representation by a defendant will permit continued representation by an attorney who must labor under the impediment of this type of conflict of interest. *See Provenzano*, 620 F.2d 985; *Tocco*, 575 F.Supp. 100; *Seigner*, 498 F.Supp. 282; *Commonwealth v. Connor*, 381 Mass. 500, 410 N.E.2d 709 (Mass.1980). *See generally* E. Margolin & S. Coliver, *Pretrial Disqualification of Criminal Defense Counsel*, 20 Am.Crim.L.Rev. 227 (1981). In recognition of the great variety of circumstances in which conflicts of inter-

4. The nature and extent of the conflict of interest in this case were explored in section II(A) of this opinion.

est may arise during litigation, we adopt the balancing approach as best designed to ensure careful scrutiny of the important competing interests inevitably present.

The petitioner undeniably desires continued representation by the public defender's office. Members of that office have represented the petitioner from the inception of this case, and the petitioner has never questioned the competence or fidelity of his assigned attorneys. However, as described in section II(A) of this opinion, a conflict of interest has arisen because of the circumstances surrounding the relationship of prosecution witness Marquez and the office of the public defender. Notwithstanding the impediment posed to his right to conflict-free representation in this case, the petitioner tendered to the respondent a written waiver of any conflict. This waiver stated that the petitioner had been advised by his attorneys that a conflict of interest may exist because of the prior representation of Marquez by the public defender's office, that the petitioner's attorneys would be unable to use any confidential information obtained from Marquez at the petitioner's trial, and that the petitioner still wished to be represented by his present attorneys. Under these circumstances, the petitioner's desire for continued representation by the public defender is entitled to great weight.

Because Marquez had been represented by the public defender's office on the Den-

ver theft charges for a substantial period of time prior to Joyce's withdrawal as her attorney, the public defender's office had ample opportunity to obtain varied information potentially useful in any cross-examination of Marquez. However, it is of some significance that Marquez, who was represented by independent counsel at the time of the motions hearing in this case, did not join the prosecution's motion to disqualify, nor has she indicated any objection to the public defender's continued representation of the petitioner. *See Cunningham*, 672 F.2d 1064. Moreover, during the hearing on the People's motion, the petitioner's counsel represented to the respondent that they had ample material to impeach Marquez from sources entirely independent of any confidential communications from Marquez. That material consists in part of letters written by Marquez to the petitioner and introduced as evidence at the hearing. Furthermore, Marquez' interest in preserving the confidentiality of her communications with prior counsel may be protected at trial by the trial judge as well as by her own objections to particular questions. *See Cunningham*, 672 F.2d 1064; *Armedo-Sarmiento*, 524 F.2d 591. In view of these circumstances, the conflict of interest may prove of relatively minor significance at trial.

The interest of the public in the fair and proper administration of justice[5] includes concerns that trials be conducted

---

5. During its lengthy ruling on the People's motion to disqualify, the respondent made the following observations:

> The use of [Marquez'] letters could conceivably be attacked by things that occurred between her and David Joyce, and may indeed be contained in her file. . . .
>
> The attack on [Marquez']˙ credibility, it seems to this Court, could well involve David Joyce as a witness, possibly helpful to the defendant, and would involve him necessarily in an attack on the credibility of the former client. It seems to the Court that is unseemly and something that should not be allowed to occur.

Canon 9 of the Code admonishes lawyers to "avoid even the appearance of impropriety." Conduct constituting an appearance of impropriety may in itself be sufficient to require disqualification of a lawyer from further represen-

tation of a client. *See, e.g., United States v. Hobson*, 672 F.2d 825 (11th Cir.), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982); *Cleary v. District Court*, 704 P.2d 866 (Colo.1985); *Osborn v. District Court*, 619 P.2d 41 (Colo.1980); *Rodriguez v. State*, 129 Ariz. 67, 628 P.2d 950 (1981). The judicial analysis required in appearance of impropriety cases arising under Canon 9 is similar, if not identical, to the evaluation of public interest in the fair administration of justice that is required to determine whether a defendant's waiver of conflict-free representation will suffice to prevent disqualification of the defendant's preferred attorney on conflict of interest grounds. Neither the People's motion to disqualify nor the respondent's ruling refers to Canon 9; the arguments were directed to questions of conflict of interest and Canons 4, 5 and 7 of the Code.

in an evenhanded manner; that the participants in the adversary process, including witnesses, be protected from unfair tactics; and that the courts maintain the integrity of the judicial system and the highest ethical standards of the legal profession. *James,* 708 F.2d 40; *Garcia,* 517 F.2d 272; G. Lowenthal, *supra,* at 61. In the instant case, the public's interest in ensuring that potential witnesses may freely communicate with counsel secure in the knowledge that privileged matter cannot subsequently be revealed is protected by the fact that the respondent can monitor the interrogation of Marquez at trial and by the fact that much of the information obtained by the public defender to aid in the cross-examination of Marquez may not be privileged. These factors also serve to reduce public concern that the petitioner and his counsel have gained an unfair advantage over the prosecution because of the public defender's prior representation of Marquez.

Our analysis of the factors critical to the determination of whether the petitioner must be allowed to waive conflict-free representation convinces us that the balance weighs heavily in favor of the petitioner's preference for continued representation by the public defender. Therefore, the petitioner may waive his right to conflict-free assistance of counsel to prevent the disqualification of his attorney under the circumstances of this case.

When the petitioner tendered his waiver of conflict of interest, the respondent declined to advise him with regard to his understanding of the significance of his decision. This declination was based on the respondent's belief that the petitioner could not make a knowing and intelligent waiver because it was impossible for him to understand all the possible conflicts of interest the respondent perceived to be facing the petitioner's attorneys in this case. The record indicates, however, that the major immediate conflict of interest burdening the petitioner's counsel is the conflict arising out of the public defender's prior representation of Marquez. The limitations and impediments imposed by that and related conflicts of interest in this case are not so complex as to foreclose the right of the petitioner to waive conflict-free representation.

In *People v. Castro,* 657 P.2d 932 (Colo. 1983), we suggested the following guidelines for addressing the stated desire of a defendant to retain a particular attorney even though the attorney's representation will be impeded to some extent because of a demonstrable conflict of interest:

> Once a potential conflict of interest becomes reasonably apparent, the attorney should inform the client of the nature of the conflict and, in plain terms, describe the specific ways in which the conflict may affect the attorney's ability to effectively represent the defendant at various stages of the pending litigation. The defense attorney then should place on record the potential conflict of interest and further advise the court that as complete a disclosure as possible has been made to the defendant.... If the court, upon inquiry of the defendant, is satisfied that he understandingly (voluntarily, knowingly and intelligently) waives all conflicts that are reasonably foreseeable under the circumstances, then it may accept the waiver, even though it views the defendant's decision as an improvident one.

*Id.* at 946 n. 10 (citations omitted). This or some similar procedure not only assists a trial court in determining the validity of a waiver of conflict-free representation, but it also affords the respect and deference which must be accorded an individual's informed and intelligent choice under our system of justice. *See Curcio,* 680 F.2d 881; *Garcia,* 517 F.2d 272; *cf. Faretta,* 422 U.S. 806, 95 S.Ct. 2525.

In the instant case, the record discloses that the petitioner's attorneys did advise the petitioner about the nature of the conflict resulting from the prior professional relationship between Marquez and the public defender's office and the effect that this conflict would have on the petitioner's continued representation by that office. However, when the petitioner ten-

dered a written waiver of conflict, the respondent did not independently determine from questioning the petitioner whether his waiver was made voluntarily, knowingly, and intelligently. Under these circumstances, we cannot determine whether the petitioner's tendered waiver is effective to prevent disqualification of his attorneys. On remand, independent judicial inquiry will be necessary to determine whether the petitioner has voluntarily, knowingly, and intelligently waived his right to conflict-free representation, thus permitting the public defender's office to continue its representation of the petitioner in this case. *Castro*, 657 P.2d 932.

The rule is discharged in part and made absolute in part. The cause is remanded for further proceedings consistent with the views expressed in this opinion.

VOLLACK, JUSTICE, concurring in part and dissenting in part:

I agree with Part I of the majority opinion, which discharges the rule as to the issues raised in the motion for substitution of judge. I also agree with that portion of the majority opinion which makes the rule absolute in part as to the disqualification of the public defender's office from representation of the defendant. However, because I believe the rule as to the disqualification of the public defender's office should be made absolute in total, I respectfully dissent from that portion of the majority opinion which remands to the district court for a determination by the respondent court that the petitioner has voluntarily, knowingly, and intelligently waived his right to counsel unhindered by a conflict of interest.

Rodriguez was fully advised of the potential conflict of interests created by Margie Marquez' communication with the district attorney's office and her representation by deputy public defender Joyce. He then executed a written waiver of the conflict, specifically stating that he wished to retain his present counsel.[1] The majority opinion correctly states that, "the record of the proceedings contains sufficient evidence to persuade us that the prosecution failed to meet its burden of proof [under *Williams v. District Court,* 700 P.2d 549, 555–56 (Colo.1985)] to establish that the public defender's office must be disqualified from further representation of the petitioner because Joyce might be a witness at trial." The bare assertion by the prosecution that it may call a member of the defense firm as a witness is insufficient to disqualify defense counsel. Before the prosecution can call defense counsel or a member of the defense firm as a prosecutorial witness, it must demonstrate:

(1) That defense counsel's testimony will be actually adverse to the accused;

(2) That the evidence sought to be elicited from the lawyer will likely be admissible at trial under the controlling rules of evidence; and

(3) That there is a compelling need for such evidence, which need cannot be satisfied by some other sources.

*Id.* The record of the trial court is devoid of any evidence to sustain the three prongs of *Williams, Id.* at 555–56.

While I agree with the majority's application of the three prongs of *Williams,* I respectfully dissent from its application of the guidelines for addressing the stated desire of a defendant to retain a particular attorney which we suggested in *People v.*

**1.** Frank D. Rodriguez, Jr., states as follows:

1. I have been advised by my attorneys that a potential conflict of interest may exist in this case because the Office of the Public Defender previously represented Margie Marques [sic], who has been endorsed as a prosecution witness in this case.

2. I have also been advised by my attorneys that they will be unable to use any confidential information obtained from Margie Marquez

during their representation of her in my trial in any way.

3. I have been advised by my attorneys, David Eisner, Robin Desmond and Abelardo Bernal that they have not obtained any confidential matters from Margie Marquez on her file, or from David Joyce who was her lawyer.

4. It is my wish that David Eisner, Robin Desmond and Abelardo Bernal continue as my attorneys in this case.

*Castro,* 657 P.2d 932, 946, n. 10 (Colo.1983). In footnote 10 of *Castro,* we suggested:

> Once a potential conflict of interest becomes reasonably apparent, the attorney should inform the client of the nature of the conflict and, in plain terms, describe the specific ways in which the conflict may affect the attorney's ability to effectively represent the defendant at various stages of the pending litigation. The defense attorney then should place on record the potential conflict of interest and further advise the court that as complete a disclosure as possible has been made to the defendant.... If the court, upon inquiry of the defendant, is satisfied that he understandingly (voluntarily, knowingly and intelligently) waives all conflicts that are reasonably foreseeable under the circumstances, then it may accept the waiver, even though it views the defendant's decision as an improvident one.

*Id.* at 946, n. 10 (citations omitted). The majority's reading of the guidelines suggested in *Castro* is unduly restrictive. The petitioner's written waiver clearly demonstrates that the petitioner has voluntarily, knowingly, and intelligently waived any potential conflict of interest. The waiver is specific and clear, and it affords the respect and deference which must be accorded an individual's informed and intelligent choice under our system of justice. *See United States v. Curcio,* 680 F.2d 881 (2d Cir.1982); *United States v. Garcia,* 517 F.2d 272 (5th Cir.1975); *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

I would therefore make the rule absolute in total and allow the public defender's office to continue with the representation of Rodriguez.